IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAPPINESS LILLEY,

     Plaintiff,

    v.

INALFA ROOF SYSTEMS, INC.,

    Defendant.

CIVIL ACTION FILE

NO. 1:16-CV-00187-TWT-WEJ

## ORDER AND
## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff, Happiness Lilley, filed this action [1] alleging that her former employer, defendant Inalfa Roof Systems, Inc. ("Inalfa"), retaliated against her in violation of 42 U.S.C. § 1981 ("Section 1981"). Now pending before this Court is plaintiff's Motion to Amend Complaint [30] seeking to add a count under Title VII of the Civil Rights Act of 1964, ("Title VII"), defendant's Motion for Summary Judgment [16] and Motion to Stay Discovery pending resolution of that Motion [22]. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's Motion to Amend Complaint be **GRANTED** only as to her Title VII claim, and that defendant's Motion for Summary

Judgment be **GRANTED** as to her Section 1981 claims. Accordingly, defendant's Motion to Stay Discovery is **DENIED** as moot.

I. **MOTION FOR SUMMARY JUDGMENT**

    A. **Statement of Facts**

The Court draws the material facts largely from the parties' submissions. In support of its Motion for Summary Judgment, defendant as movant filed a Statement of Undisputed Material Facts ("DSMF") [16-1]. <u>See</u> N.D. Ga. Civ. R. 56.1B.(1). As required by Local Rule 56.1B.(2)a, plaintiff submitted a response. (<u>See</u> Pl.'s Resp. to Def.'s Statement of Material Facts ("R-DSMF") [23-1].) As allowed by Local Rule 56.1B.(2)b, plaintiff filed a statement of additional facts which she contends are material and present a genuine issue for trial (<u>see</u> Pl.'s Statement of Additional Material Facts in Supp. of her Resp. to Def.'s Mot. For Summ. J. [23-2] ("PSMF")), to which defendant submitted a response. (<u>See</u> Def.'s Resp. to Pl.'s Statement of Additional Material Facts [28] ("R-PSMF").)

Where a party admits a fact proposed by the other, the Court accepts the admission as an undisputed fact for the purposes of this Report and Recommendation and cites both the proposed fact and the corresponding admission. When a party denies a proposed fact, the Court reviews the record and determines whether that denial is supported by record evidence, and if it is,

whether any fact dispute is material.  The Court excludes immaterial proposed facts.[1]  The Court sometimes modifies a proposed fact per the other party's response to better reflect the record.  The Court also rules on objections to proposed facts.  Finally, the Court includes some facts drawn from its own review of the record.  See Fed. R. Civ. P. 56(c)(3).

### 1.    Plaintiff's Employment With Inalfa

North Georgia Staffing ("NGS"), a temporary staffing agency, placed Ms. Lilley, an African-American woman, at Inalfa's facility in Acworth, Georgia, in April or May of 2014.[2]  (PSMF ¶¶ 1, 7; R-PSMF ¶¶ 1, 7; DSMF ¶ 1; R-DSMF ¶ 1.)  Inalfa and NGS later instructed plaintiff to apply for a position working directly for Inalfa, and she was required to complete and sign a standardized online employment application (the "Contract") in order to do so.  (PSMF ¶¶ 2, 3; R-PSMF ¶¶ 2, 3.)  Inalfa drafted the Contract, and plaintiff did not have the

---

[1] The Court excludes PSMF ¶¶ 8-12 and 14, describing the events leading up to plaintiff's termination, as immaterial to the instant Motion.

[2] Defendant does not dispute PSMF ¶¶ 1 and 7 but asserts that these proposed facts are not material to the instant Motion.  (See R-PSMF ¶¶ 1, 7.) Because the basic details of plaintiff's employment with Inalfa are relevant to the instant Motion, the Court overrules defendant's objection.

opportunity to negotiate, draft, or change any language in the Contract.[3]  (PSMF ¶

4; R-PSMF ¶ 4.)  An NGS representative walked Ms. Lilley through the process

of completing the Contract in Inalfa's UltiPro system.  (DSMF ¶ 2; R-DSMF ¶ 2;

PSMF ¶ 5; R-PSMF ¶ 5.)  The Contract included the following statement in bold:

> **I agree that any action or suit against Inalfa, its parent, subsidiaries, affiliates, successors and assigns and its/their current or former employees, members, directors, officers, or agents, arising out of my employment or termination of employment, including, but not limited to, claims arising under State and Federal statutes, but not Federal civil rights statutes containing a separate limitations period, must be brought within 180 days of the event giving rise to the claims or be forever barred unless the applicable statute of limitations period is shorter than 180 days in which case I will continue to be bound by that shorter limitations period.  I waive any limitation periods to the contrary.**

(DSMF ¶ 3; R-DSMF ¶ 3; Mareau Decl. Ex. A [16-2], at 5.)  No one at Inalfa or

NGS explained the meaning of the 180-day limitation to Ms. Lilley.[4]  (PSMF ¶ 6;

R-PSMF ¶ 6.)  Plaintiff electronically signed the Contract, immediately below the

_____

[3] Defendant does not dispute PSMF ¶ 4 but asserts that it is not material to the instant Motion.  (See R-PSMF ¶ 4.)  The Court includes the information for background purposes.

[4] The Court overrules defendant's relevancy objection to PSMF ¶ 6.  (See R-PSMF ¶ 5.)

4

paragraph containing the limitations provision, on June 24, 2014.  (DSMF ¶ 4; R-DSMF ¶ 4; Mareau Decl. Ex. A, at 5.)

### 2. The Instant Dispute

Inalfa terminated plaintiff's employment on December 10, 2104.[5]  (DSMF ¶ 5; R-DSMF ¶ 5; PSMF ¶ 13; R-PSMF ¶ 13.)  That same day, Ms. Lilley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, sex discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII").  (DSMF ¶ 6; R-DSMF ¶ 6.)  On January 20, 2016, plaintiff filed the Complaint against Inalfa in this Court, alleging that she was terminated in retaliation for engaging in conduct protected under Section 1981.  (DSMF ¶ 7; R-DSMF ¶ 7.)

### B. Summary Judgment Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

_____

[5] Plaintiff disputes defendant's contention in DSMF ¶ 5 that she was terminated for making threats against her co-workers in violation of company policy.  (R-DSMF ¶ 5.)  She asserts that she did not make threats, and was instead terminated in retaliation for her complaint of race discrimination.  (Id.)  Because defendant's specific reason for terminating plaintiff is immaterial at this point, the Court modifies DSMF ¶ 5 above.

as a matter of law." <u>See</u> Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." <u>Rice-Lamar v. City of Fort Lauderdale</u>, 232 F.3d 836, 840 (11th Cir. 2000) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324.  Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment

is appropriate.  Rice-Lamar, 232 F.3d at 840.  "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried.  Anderson, 477 U.S. at 250.  The applicable substantive law will identify those facts that are material.  Id. at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  For factual issues to be "genuine," they must have a real basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  Id. at 587.

### C.  Discussion

#### 1.  Section 1981's Statute of Limitations

Until the Supreme Court's decision in Jones v. R. R. Donnelley & Sons Co., 541 U.S. 369 (2004), Section 1981 claims had no applicable federal statute of

7

limitations.  See id. at 371 (noting that "[l]ike many federal statutes, 42 U.S.C. § 1981 does not contain a statute of limitations.")[6]  Before Jones, federal courts were required to borrow "the most appropriate or analogous state statute of limitations" to claims based on asserted violations of Section 1981.  Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987).  In Jones, the Supreme Court held that Section 1981 claims based on employment activity after formation of a contract including, inter alia, termination, are governed by the four-year "catch-all" limitations period established for federal claims three years earlier in 28 U.S.C. § 1658(a).[7]  Jones, 541 U.S. at 382.  The Eleventh Circuit has confirmed that the four-year limitations period applies to Section 1981 retaliation claims.  See Chandler v. Volunteers of Am., 598 F. App'x 655, 665 (11th Cir. 2015) (per curiam) (citing Baker v. Birmingham Bd. of Educ., 531 F.3d 1336, 1338-39 (11th

---

[6] Plaintiff contends that the quoted language in the text preceding this note is "off-the-cuff" because it is the first sentence of the Jones decision.  (See Pl.'s Resp. 9, n.2.)  The undersigned is unaware of any reason why the location of language in an opinion would render it less authoritative.

[7]Pursuant to 28 U.S.C. § 1658(a):  "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C. § 1658(a).

8

Cir. 2008) (holding that "a § 1981 action must be filed within the four-year statute of limitations prescribed by 28 U.S.C. § 1658")).

As described supra Part I.A, by signing the Contract, Ms. Lilley agreed to the following:

> [A]ny action . . . arising out of my employment . . . including, but not limited to, claims arising under State and Federal statutes, but not Federal civil rights statutes containing a separate limitations period, must be brought within 180 days of the event giving rise to the claims . . .

The parties do not dispute that plaintiff's claim arises out of her employment with Inalfa, that it arises under a federal civil rights statute (Section 1981)[8], or that she brought the instant action on January 20, 2016, which is more than 180 days after the event giving rise to the claims (i.e., her termination on December 10, 2014). The parties dispute only whether the Contract's limitations period covers claims brought under Section 1981.  Specifically, while they agree that the 180-day limitations period does not cover "[f]ederal civil rights statutes containing a

---

[8] The relevant portion of Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The Eleventh Circuit has held that Section 1981 supports a retaliation cause of action, such as the one Ms. Lilley asserts here.  Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412-13, n.14 (11th Cir. 1998).

9

separate limitations period," they dispute whether this languages covers Section 1981, because they have different interpretations of the meaning of the words "containing" and "separate."

Defendant argues that Section 1981 does not "contain" a "separate" limitations period as intended by the Contract because the section of the U.S. Code where Section 1981 is located does not actually contain a statute of limitations provision. (See Def.'s Br. 5-6.) Because the 180-day period is reasonable, defendant argues, it should be upheld as effective to bar plaintiff's claim. (See id. at 3-5.) Plaintiff responds that because Section 1981 incorporates the catch-all four-year statute of limitations found in 28 U.S.C. § 1658(a), Section 1981 does contain a statute of limitations. (See Pl.'s Resp. [23] 5-8.) Plaintiff further argues that Inalfa's interpretation of the Contract should be rejected as ambiguous, and because it is a contract of adhesion. (See id. at 8-13.) Defendant reiterates its arguments regarding the reasonableness of the 180-day limitations period in reply, and adds that while Section 1981 claims are subject to the "catch-all" four-year statute of limitations, Section 1981 does not actually contain that period and thus, does not "contain" a "separate" limitations period for purposes of the Contract. (See Def.'s Reply [27] 2-6.)

10

### 2.     The Contract is Not Ambiguous

Under Georgia law, contract construction involves three steps:  First, the trial court must decide whether the language is clear and unambiguous; if so, the court enforces the contract according to its clear terms, looking only to the contract itself for guidance as to its meaning.  See Stonegate Bank v. TD Bank, N.A., 596 F. App'x 834, 835 (11th Cir. 2015).   Thus, "[t]he existence or nonexistence of an ambiguity is a question of law for the court."  Id.   If the contract is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity.  Id.  If the contract remains ambiguous after those rules are applied, the question of what the ambiguous language means and what the parties intended must be resolved by a jury.   See id.   "The purpose of contract construction is to effectuate the intent of the parties, and that intent is presumed to reside in the language they chose to employ in the agreement."  ProfiTel Grp., LLC v. PolyOne Corp., 238 F. App'x 444, 447 (11th Cir. 2007) (internal quotation omitted).

At the first step of the analysis, "if the words in the contract are plain and obvious, they must be given their literal meaning, and unambiguous terms are taken in their plain, ordinary and popular sense . . ."  Stonegate Bank, 596 F. App'x at 835; see also O.C.G.A. § 13-2-2(2) ("[w]ords generally bear their usual

11

and common signification.")  Giving the disputed words "separate" and "contains" their ordinary meaning, the undersigned concludes that Section 1981 does not contain its own separate, distinct statute of limitations.  Rather, the four-year limitations period provided in 28 U.S.C. § 1658 applies to Section 1981 by default.  Plaintiff's argument that Section 1981 "incorporates" this limitations period is unavailing—nowhere in its text does Section 1981 refer to 28 U.S.C. § 1658, or to any limitations period at all.  See Kwok v. Delta Air Lines Inc., 994 F. Supp. 2d 1290, 1294 (N.D. Ga. 2014) (holding that proper reading of contract must comport with its clear language.)  Plaintiff appears to admit as much through her observation regarding the Supreme Court's statement in Jones, as she states that "[t]he Court was referring to the obvious fact that the limitations period is not found within the text of 42 U.S.C. § 1981."  (See Pl.'s Resp. 9, n.2.)  Thus, the statute does not "contain" a "separate" limitations period under the Contract language's ordinary meaning.

Plaintiff argues that the Contract could be interpreted in multiple ways. Specifically, she reads the word "contains" to include "incorporates" or "is subject to," and the word "separate" to refer to having an applicable federal statute of limitations rather than having to borrow one from state law.  Because the Contract can be read multiple ways, she contends, the Contract is ambiguous,

12

and thus should be construed against Inalfa as the drafter, particularly given that the Contract was a contract of adhesion.[9]

"It is a cardinal rule of contract construction that when the construction of a contract is doubtful, the construction that goes most strongly against the drafter of the agreement is to be preferred." Winterboer v. Floyd Healthcare Mgmt., 778 S.E.2d 354, 359 (Ga. Ct. App. 2015) (internal quotations omitted); see also O.C.G.A. § 13-2-2(5). This rule applies to employment contracts, Obester v. Lucas Assoc., No. 1:08-CV-03491-MHS-AJB, 2010 WL 8292401, *17 (N.D. Ga. Aug. 2, 2010) (citing Schuck v. Blue Cross & Blue Shield of Ga., 534 S.E.2d 533, 535 (2000)), and in particular to adhesion contracts, Allapattah Servs. v. Exxon Corp., 61 F. Supp. 2d 1308, 1320 n.20 (S.D. Fla. 1999).

As discussed supra, no ambiguity exists in the terms "contains" and "separate" as they are used in the Contract. Thus, the Court should enforce the Contract's clear terms. See ProfiTel Grp., LLC, 238 F. App'x at 447 (internal

─────────────

[9] Under Georgia law, an adhesion contract is a standardized contract offered on a "take it or leave it" basis and under such conditions that a consumer cannot obtain the desired product or service (or obtain desired employment) except by acquiescing to the form contract. See Hosp. Auth. v. Bohannon, 611 S.E.2d 663, 666 (Ga. Ct. App. 2005) (citing Walton Elec. Membership Corp. v. Snyder, 487 S.E.2d 613, n.6 (Ga. Ct. App. 1997)).

13

citations omitted) (holding that "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties"); see also Youngblood v. State Farm Mut. Auto. Ins. Co., No. 15-11214, 2015 WL 9461600, at *1 (11th Cir. Dec. 28, 2015) (unpublished) (per curiam) (noting that "unless an ambiguity exists, the court should not resort to outside evidence or complex rules of construction"). The fact that Ms. Lilley was presented with the Contract on a "take-it-or-leave-it" basis does not alter this result.

Moreover, plaintiff's suggested interpretation of the Contract fails to support her argument that the Contract is subject to multiple interpretations, because her interpretation would lead to an absurd result.  Under plaintiff's interpretation of the Contract, the language excluding "Federal civil rights statutes containing a separate limitations period" would never apply, because any statute containing no limitations period would "incorporate" or be "subject to" a limitations period by case law.  Thus, her suggested interpretation is not a reasonable one and is insufficient to show that the Contract is ambiguous.  See Kwok, 994 F. Supp. 2d at 1294 (citing Tudor v. Am. Emp. Ins. Co., 173 S.E.2d 403 (Ga. Ct. App. 1970) ("[a] contract must be given a reasonable construction

14

which will uphold and enforce the instrument, if possible, rather than a construction which would . . . lead to an absurd result")).

Plaintiff counters that it is defendant's interpretation that would lead to an absurd result, because under defendant's reading, the determination of which civil rights statutes would be covered under the Contract would be arbitrary. However, reading the Contract as Inalfa does shows that this result is not actually arbitrary. Instead, as plaintiff later observes, it leads to the result that only statutes that contain administrative exhaustion requirements, such as Title VII, would not be covered by the 180-day limitation.[10]  Plaintiff contends that if this was the result Inalfa intended, it "could have simply said so."  But the fact that Inalfa did not does not render the parties' agreement less binding or their intent less clear.

Finally, Ms. Lilley's contention that this interpretation is "unnecessary" because the law already prohibits contractually shortening statutes of limitations that affect administrative exhaustion requirements also fails.  She is correct that courts  "must read the contract to give meaning to each and every word it contains" and "avoid treating a word as redundant or mere surplusage."  Equity Lifestyle

---

[10] Notably, Section 1981 does not have an administrative exhaustion requirement.  See Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1304 (N.D. Ga. 2009).

15

Props., Inc. v. Fla. Mowing & Landscape Serv., 556 F.3d 1232, 1242 (11th Cir. 2009).   However, she is incorrect that those maxims render Inalfa's language meaningless here.   Inalfa's language, while perhaps inartfully drafted, is not superfluous; instead, it excludes from the Contract's statute of limitations civil rights statutes that cannot legally be subject to such a limitation.   Thus, the Contract is not ambiguous.

### 3.        The Contract's Limitations Period Bars Plaintiff's Claim

In the Eleventh Circuit, contractual limitations periods are valid, provided they are reasonable.   See Northlake Reg'l Med. Ctr. v. Waffle House Sys. Emp. Benefit Plan, 160 F.3d 1301, 1302 (11th Cir. 1998).   The reasonableness of a contractual limitations period is a matter of law for the court to decide.   See Leigh Ellis & Co. v. Davis, 260 U.S. 682, 689 (1923).   Ms. Lilley does not dispute that she signed the Contract, that a representative from NGS walked her through it, or that the 180-day limitations period in the Contract is reasonable.   Plaintiff had an adequate opportunity to investigate her claim and file suit within the 180-day period outlined in the Contract; all of the facts giving rise to her claim occurred before her termination; and she filed a charge of discrimination with the EEOC on the very day of her discharge.   See Northlake, 160 F.3d at 1304 (contractual

16

limitations period was reasonable where it "provided an adequate opportunity for Northlake to investigate the claim and file suit").

In sum, plaintiff's Complaint, based entirely on her Section 1981 claim, is barred by the Contract's reasonable statute of limitations.  Ms. Lilley was terminated on December 10, 2014.  In order to timely bring her Section 1981 retaliation claim, plaintiff was required to file suit by June 8, 2015.  Plaintiff did not file the Complaint until January 20, 2016.  (See Compl.)  As a result, her Section 1981 claim is time-barred, and summary judgment should be granted in defendant's favor.

## II.    MOTION TO AMEND COMPLAINT

Plaintiff seeks to amend the Complaint to add a count for retaliation in violation of Title VII based on the same facts as her Section 1981 claim.  (Pl.'s Mot. 1.)  Plaintiff states that the Title VII claim could not have been brought earlier because, despite the fact that the EEOC issued a Notice of Right to Sue Letter (the "RTS Letter") on March 5, 2015, (see Lilley Decl. [30-1] Ex. F), neither she nor her attorney received it.  (Id. at 2-4.)  Ms. Lilley alleges that she never received a copy because her address was listed incorrectly on the charge, and that her counsel never received a copy because the EEOC erroneously did not associate him with her case, despite having communicated with him previously.

17

(Id.)  Plaintiff thus contends that she could not have asserted this claim earlier even with diligence, because she did not receive the RTS Letter due to circumstances beyond her control.  (Id. at 5-9.)  Inalfa responds that plaintiff was not diligent in pursuing her Title VII claim and has not shown good cause for her delay because she failed to contact the EEOC to inquire about the RTS Letter before the amendment deadline and failed to review the address listed on the charge for accuracy.  (Def.'s Resp. [33] 3-6.)  Defendant further argues that amendment is futile, as plaintiff's Title VII claim is time-barred for failure to file it within 90 days of receipt of the original RTS Letter.  (Id. at 6-10.)

### A.   Governing Standard

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  See Fed. R. Civ. P. 15(a)(1).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Id. at 15(a)(2).  Rule 15(a)(2) instructs that leave of the court to amend pleadings "shall be freely given when justice so requires."  However, the decision whether to allow an amended pleading after the Scheduling Order amendment deadline, as

18

this case is postured,[11] is informed both by Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure, and Rule 16 ultimately governs the decision.   See McGrotha v. Fed Ex Ground Package Sys., Inc., No. 5:05-CV-391 (CAR), 2007 WL 640457, at *2 (M.D. Ga. Feb. 24, 20070); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417 (11th Cir. 1998) (per curiam).

Rule 16(b) directs district courts to enter a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  Once such an order has been entered, it "may be modified only for good cause and with the judge's consent."  Id. 16(b)(4).  See Sosa, 113 F.3d at 1419 (noting that "[i]f we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.")

Good cause is found "when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed."  Poole v. City of Plantation, Fla., No. 05-

---

[11] The Court entered a Scheduling Order in this case on April 19, 2016, setting a May 16, 2016 deadline for amending the pleadings.  (See Scheduling Order [13] 2.)

19

61698-CIV, 2010 WL 1791905, at *33 (S.D. Fla. May 5, 2010); see also Sosa, 113 F.3d at 1418 (noting that the "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension.")  An evaluation of good cause under Rule 16(b) is more stringent than the analysis under Rule 15.  See Poole, 2010 WL 1791905 at *33 (citing Sosa, 133 F.3d at 1418; and Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).  Thus, the presumption is against modification unless the movant can show diligence.  Sosa, 113 F.3d at 1418.

### B.   Discussion

#### 1.   Plaintiff Has Shown Good Cause

Plaintiff filed the instant Motion on June 25, 2016, after the Scheduling Order's amendment deadline of May 16, 2016; thus, the Court must determine whether she has shown good cause for delay under Rule 16(b).  See Poole, 2010 WL 1791905, at *32-33.

Title VII requires that suit be brought within 90 days after receipt of notice of right to sue from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  In the Eleventh Circuit, this 90-day limitations period is triggered by receipt of such notice.  See Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991) (emphasis added); see also Santini v. Cleveland Clinic, 232 F.3d 823, 825

(11th Cir. 2000) (per curiam); <u>Franks v. Bowman Transp. Co.</u>, 495 F.2d 398 (5th Cir. 1974) [12], <u>rev'd on other grounds</u>, 424 U.S. 747 (1976) (holding that "the limitations period begins to run upon notification of the aggrieved party" and that "statutory notification is complete only upon actual receipt of the suit letter").

In order to prevent this rule from creating "manipulable open-ended time extension[s]," courts apply the 90-day period and receipt rules "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case . . . without conditioning a claimant's right to sue under Title VII on fortuitous circumstances or events beyond [her] control." <u>Zillyette v. Capital One Fin. Corp.</u>, 179 F.3d 1337, 1340 (11th Cir. 1999) (internal citations omitted). Plaintiffs are thus required to assume "some minimum responsibility" for an "orderly and expeditious resolution" of their claims. <u>Lewis v. Conners Steel Co.</u>, 673 F.2d 1240, 1242 (11th Cir. 1982) (per curiam).  Receipt is presumed when a plaintiff is unable to show that her failure to receive a notice of right to sue "was

_____

[12] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc).

in no way her fault."  Kerr v. McDonald's Corp., 427 F.3d 947, 952 (11th Cir.
2005) (per curiam).

The parties agree on the above standards.  However, they disagree on the
application of the case-by-case approach here.  Plaintiff states that the failure to
receive the RTS Letter was in no way her fault because, "due to a series of
administrative errors by the EEOC, the RTS Notice was not issued to Plaintiff's
counsel and was mailed without including Plaintiff's full address."  (Pl.'s Mot. 2.)
Specifically, plaintiff asserts that she provided her full mailing address on the
Intake Questionnaire she completed when filing the charge, but that the
investigator failed to copy her apartment number onto the charge.  (Id. at 3; see
also Lilley Decl. Exs. A & B.)  Although the EEOC Investigator told Ms. Lilley
to review the "facts" section of the form, which she did, he did not mention the
address section, so she did not review it.  (Pl.'s Mot. at 3.)

Plaintiff further argues that the failure to receive the RTS Letter is in no
way her fault because the letter was not sent to her counsel.  Plaintiff's counsel
sent a Letter of Representation to the EEOC on January 20, 2015, requesting that
the EEOC send all future correspondence to him, which the EEOC acknowledged.
(Pl.'s Mot. at 3; see also Stark Decl. [30-2] Exs. A & B.)  Upon the Investigator's
request, plaintiff's counsel sent additional evidence on February 16, 2015, and

22

assumed that, because he received no further communications, the EEOC had re-opened the investigation.  (Pl.'s Mot. 3-4.)  The EEOC eventually issued the RTS Letter on March 5, 2015 (see Lilley Decl. [30-1] Ex. F), mailing it to plaintiff's correct street address but without including her apartment number; the EEOC did not send it to plaintiff's counsel.  (Pl.'s Mot. 4.)  Thus, plaintiff and her counsel did not receive the RTS Letter; they were made aware of it only after her counsel inquired about it on June 9, 2016.  (Id.)

Defendant responds that plaintiff's Motion to Amend is untimely, because the facts underlying her Title VII claim are identical to those underlying her Section 1981 claim, so she was already aware of them at the time she filed the Complaint.  (Def.'s Resp. 4.)  She has not shown good cause for delay, defendant argues, because had she exercised diligence in pursuing her claim, she would have reviewed the address information on the charge form, sought confirmation from the EEOC that no notice of right to sue had been issued before the Scheduling Order's deadline, or simply requested such a letter within 180 days of the filing of her charge pursuant to 29 C.F.R. § 1601.28(a).  (Def.'s Resp. 4-5, n. 1.)

The Eleventh Circuit has held that a district court may find undue delay when the movant knew of facts supporting the new claim before the movant

23

requested leave to amend.  See, e.g., Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) ("The facts upon which the claims . . . were based were available at the time the complaints were filed.").  Plaintiff's Title VII retaliation claim relies on the same facts underlying her Section 1981 claim.  Thus, unless plaintiff can show that she did not receive the RTS Letter through no fault of her own, she cannot show good cause for failing to assert her Title VII claim earlier.

Plaintiff has sufficiently alleged good cause for her delay.  Neither she nor her counsel was aware that the EEOC had concluded its investigation of her claim; in fact, counsel for plaintiff sent additional evidence at the EEOC's request, so it was reasonable for both to assume that the investigation was still underway. See Griffin v. Neptune Tech. Grp., 2:14CV16-MHT, 2015 WL 1635939, at *21-23, n.7 (M.D. Ala. Apr. 13, 2015) (finding plaintiff "would not necessarily have expected to receive a notice within a certain period of time" even though he heard that the EEOC investigator had recommended closure). There was no reason plaintiff or her attorney should have been on notice that the RTS Letter had been issued and mailed when they reasonably believed the investigation was ongoing.

As Inalfa observes, Ms. Lilley must assume some responsibility for her claim.  "A plaintiff 'should not be heard to complain' unless the plaintiff has assumed the minimal 'burden of advising the EEOC of address changes or  . . .

24

[taken] other reasonable steps to ensure delivery of the notice to his current address.'"  <u>Stallworth v. Wells Fargo Armored Servs. Corp.</u>, 936 F.2d 522, 524 (11th Cir. 1991) (quoting <u>Lewis v. Connors Steel Co.</u>, 673 F.2d 1240, 1243 (11th Cir.1982)).  That responsibility, however, need not extend to correcting internal errors at the EEOC.  This is not a case where plaintiff moved and failed to keep the EEOC informed of her updated address.  Even if, as defendant argues, she should have reviewed the address field on the charge form, the Investigator did not ask her to do so, and there was no reason she should have suspected that the Investigator did not copy it correctly.[13]  She checked her mail every other day and would not have missed the RTS Letter had it arrived.  This is reasonable and sufficient to show that Ms. Lilley's non-receipt of the letter was through no fault of her own.  <u>See</u> <u>Stallworth</u>, 936 F.2d at 525 (finding plaintiff not at fault for non-receipt of RTS Letter even though plaintiff temporarily changed addresses, only checking mail at the permanent address she gave the EEOC six times per month).

Moreover, plaintiff cannot be held responsible for the EEOC's failure to send the RTS Letter to her attorney, despite its acknowledgement of his Letter of

---

[13] The Court declines to consider the non-binding authority defendant cites. (<u>See</u> Def.'s Resp. 9 (citing <u>Carl v. Western-Southern Life Insurance Co.</u>, No. 09-3990, 2010 WL 3860432 (E.D. Penn. Sept. 30, 2010).)

25

Representation.  See Stallworth, 936 F.2d at 525 (finding "the primary fault for the failed delivery rests upon the EEOC" for failure to deliver RTS Letter to plaintiff's attorney after being expressly requested to do so).  Plaintiff has adequately shown that her failure to receive a RTS Letter was due to circumstances beyond her control, and that it "was in no way her fault."  Kerr, 427 F.3d at 952.  Thus, she has demonstrated good cause for filing the Motion to Amend after the deadline set forth in the Scheduling Order.

### 2.      The Motion to Amend is Not Futile

Moreover, plaintiff's Motion to Amend is not futile.  As noted supra, a trial court may choose not to allow a party to amend "when the amendment . . .  is futile."  Campbell, 166 F.3d at 1162.  A claim is futile if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996); see also Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (per curiam) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'") (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam)).

Inalfa argues that receipt of the original March 5, 2015 RTS Letter should be presumed because plaintiff is unable to show that her failure to receive the letter was not her fault.  (Def.'s Resp. 6-10.)  Defendant follows the presumption

26

of three days for receipt by mail to conclude that plaintiff should have filed her Title VII claim no later than June 8, 2015.  See Kerr, 427 F.3d at 953 n.9 ("When the date of receipt is in dispute, this court has applied a presumption of three days for receipt by mail").  Because she did not do so, Inalfa contends, her claim is time-barred and cannot withstand a motion to dismiss.

As discussed supra Part III.B.1, however, plaintiff has shown that she did not receive the RTS Letter due to circumstances beyond her control.  Thus, the presumption of receipt of the original RTS Letter does not apply.  Instead, the date of actual receipt—June 10, 2016—triggers the 90-day period.  Ms. Lilley filed the Motion to Amend seeking to assert her Title VII claim on June 25, 2016, well within that period.  Therefore, the Title VII retaliation claim is timely, and allowing plaintiff to add it to the Complaint is not futile.  Accordingly, the court **GRANTS** the Motion to Amend [30].

III.   **CONCLUSION**

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [16] be **GRANTED** and plaintiff's Section 1981 claim be **DISMISSED**.

The undersigned **GRANTS** the Motion to Amend [30] as to plaintiff's Title VII claim.

27

The undersigned **FURTHER DENIES** defendant's Motion to Stay Discovery [22] as moot.

**SO ORDERED AND RECOMMENDED**, this 18th day of July, 2016.


_WALTER E. JOHNSON_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

28